UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY LEWIS,<br><br>         Plaintiff,<br><br>    vs.<br><br>JEFFERY WANG, et al.,<br><br>         Defendants. | 1:12-cv-01867-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM<br>(Doc. 9.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

## I.     BACKGROUND

Jerry Lewis ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on November 14, 2012. (Doc. 1.) The court screened the Complaint pursuant to 28 U.S.C. 1915A and issued an order on August 8, 2013, dismissing the Complaint for failure to state a claim, with leave to amend. (Doc. 8.) On September 6, 2013, Plaintiff filed the First Amended Complaint, which is now before the court for screening. (Doc. 9.)

## II.    SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id.

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at Corcoran State Prison (CSP) in Corcoran, California, where the events at issue in the First Amended Complaint allegedly occurred. Plaintiff names as defendants Dr. Jeffery Wang, Dr. E. Clark, Dr. W. Ulit, Physician's Assistant C. Sisodia, and Dr. R. Gill (collectively, "Defendants"). All of the Defendants were employed by the California Department of Corrections and Rehabilitation at CSP at the time of the events at issue. Plaintiff's factual allegations follow.

Plaintiff has a long history of suffering severe pain and spasms in his lower back. Because of this condition, Plaintiff was provided with Chronos[1] allowing him a bottom bunk, double mattress, orthopedic shoes, wedge pillow, and no repetitive lifting of fifteen pounds.

///

---

[1] "A 'chrono' is a collection of informal notes taken by prison officials documenting medical orders." Akhtar v. Mesa, 698 F.3d 1202, 1205 n.1 (9th Cir. 2012).

Plaintiff filed an inmate grievance requesting a permanent lower tier Chrono and continuance of the bottom bunk Chrono.  At the First Level of appeal, on or about January 19, 2012, defendant Physician's Assistant C. Sisodia denied the request, stating that Plaintiff no longer qualifies.  Plaintiff informed defendant Sisodia that his pain level is so severe and unbearable that he is unable to sleep throughout most nights.  Defendant Sisodia proceeded to vacate Plaintiff's Chronos for double mattress, orthopedic shoes, wedge pillow, and no repetitive lifting of fifteen pounds.

On January 21 and 22, 2012, Plaintiff informed defendant Dr. Edgar Clark that he was experiencing severe lower back pains and spasms, and that the pain causes numbness to his feet, making it difficult to climb up and down the stairs, causing him to nearly fall down the stairs on a regular basis.  Dr. Clark denied Plaintiff's request for lower bunk and lower tier Chronos, and did not approve the continuance of any of Plaintiff's medical Chronos, out of retaliation for Plaintiff using the prison grievance system.  As Chief Medical Officer, Dr. Clark has the final decision on requests for approval of Plaintiff's Chronos and prescriptions.  Dr. Clark vacated the Chronos on the ground that Plaintiff's pain and spasms had shown improvement.

On or about February 14, 2012, defendant Dr. R. Gill, who was fully aware of Plaintiff's history of pain and spasms, also denied Plaintiff's requests for lower tier and lower bunk Chronos, and stripped Plaintiff of his Chronos for double mattress, orthopedic shoes, wedge pillow, and no repetitive lifting of fifteen pounds.  Dr. Gill also denied Plaintiff's request for the pain and spasm medication Flexoril.  Further, Dr. Gill appeared to retaliate against Plaintiff for using the grievance system, using "Over-Kill" to strip Plaintiff of all of his permanent Chronos without any legitimate medical reason. (First Amended Cmp at 3 ¶IV.) Dr. Gill stated in his denial that Plaintiff's condition had improved over time, and Plaintiff no longer qualifies [for the Chronos] per Inmate Medical Services.

On March 21, 2012, defendant Dr. Jeffery Wang, Acting Chief Medical Officer, while knowing of Plaintiff's long history of pain and spasms, and surgery on Plaintiff's feet, denied Plaintiff's request for bottom bunk and bottom tier Chronos at the Second Level of review.

This denial forced Plaintiff to climb stairs and climb up and down from the top bunk, which caused further injury and increased the pain and spasms. Dr. Wang also stripped Plaintiff of his existing medical Chronos for double mattress, orthopedic shoes, wedge pillow, and no repetitive lifting of fifteen pounds, claiming that Plaintiff's condition has shown improvement over time, and he no longer needs to be housed on the bottom tier.

On or about March 21, 2012, May 30, 2012, and July 13, 2012, Plaintiff requested that Dr. W. Ulit examine and treat the constant excruciating pain in his lower back which extended from his hip down the back of his right leg. Plaintiff informed Dr. Ulit that he is experiencing spasms causing numbness in his foot and leg, and Ibuprofen is not helpful.

In a report dated October 30, 2012, Plaintiff received x-ray findings from a doctor at Truxtun Radiology Medical Group revealing that "[t]here is considerable new degenerative change at this inmate's L5-S1 disc level." (First Amended Comp at 4:7-8, 9 (Exh)). Plaintiff asserts that this report shows that Defendants' actions caused his injury to become worse.

Plaintiff's primary physician prescribed the pain medication Indomethacin for Plaintiff, to be administered from May 22, 2013 to August 20, 2013. However, on June 28, 2013, Plaintiff was only given half the prescription, for only 15 days instead of 30. On July 1, 2013, Physician's Assistant Sisodia interfered with the doctor's treatment by completely stopping the prescription. Plaintiff was left without any pain medication whatsoever from July 13, 2013 until August 8, 2013. On August 8, 2013, defendant Sisodia informed Plaintiff that she had banned the effective pain medication Indomethacin. Plaintiff requested another medication, Flexoril, which had been effective at reducing the pain and spasms, but defendant Sisodia, who is not a doctor, denied the request and prescribed medications that were known by her and other defendants to be ineffective. Even though defendant Sisodia is aware that Ibuprofen, Neproxin, Oxycarbymol, Tylenol, Robaxin, and several other medications had failed to reduce Plaintiff's pain and spasms, she still re-prescribed Ibuprofen and Oxycarbymol for Plaintiff when he described his severe pain symptoms to her.

On August 16, 2013, defendant Dr. Ulit informed Plaintiff that he was going to stop Plaintiff's prescription for the ineffective medications Ibuprofen and Oxycarbymol and

prescribe the pain medication Sulindoc, which was unfamiliar to Plaintiff. From August 16-19, 2013, Plaintiff was without any pain medication. Plaintiff was called to the clinic on August 19, 2013. Plaintiff requested the effective pain and spasm medications Idomethacin and Flexoril, but was denied. The new medication was ineffective against his pain and spasms.

Plaintiff presently suffers from unbearable pain in his lower back extending from his right hip down the back of his right leg, and possible neurological damage. Plaintiff fears for his safety because he has been forced to climb stairs, climb up and down from the top bunk, and be housed in an upstairs cell, without effective medications.

Plaintiff requests injunctive relief via court orders for Defendants to provide him with the two effective medications he requested, and to provide him with lower bunk and lower tier Chronos and reinstate his previous Chronos.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

### A. Eighth Amendment Medical Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in

further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . .

that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff has shown that he has serious medical needs, because he suffers spasms in his lower back, and excruciating pain. However, Plaintiff fails to allege facts demonstrating that any of the Defendants were deliberately indifferent to Plaintiff's medical need. Plaintiff has not shown that any of the Defendants knew about and deliberately disregarded his serious medical needs and acted, or failed to act, knowing of a substantial risk of serious harm or injury to Plaintiff. As stated above, "[d]eliberate indifference is a high legal standard," and "[a] showing of medical malpractice or even gross negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Toguchi, 391 F.3d at 1060. Therefore, Plaintiff fails to state a cognizable medical claim against any of the Defendants.

### B.   Inmate Appeals Process

Plaintiff alleges that some of the Defendants failed to respond properly to his inmate appeals. Defendants' actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing a prisoner's administrative appeal, without more, are not actionable under section 1983. Buckley, 997 F.2d at 495. Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails to state a cognizable claim for the processing and/or reviewing of his inmate appeals.

**C.     Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995)(quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Plaintiff's retaliation claim fails, because he has not alleged any facts connecting Defendants' adverse conduct to Plaintiff's filing of prison grievances. Plaintiff fails to show that Defendants' acted adversely against him *because of* the grievances he filed. Moreover, Plaintiff has acknowledged that Defendants changed his medications and cancelled his medical Chronos based on their belief that Plaintiff's medical condition had improved, not because Plaintiff was filing grievances. Therefore, Plaintiff fails to state a claim for retaliation against any of the Defendants.

**V.     CONCLUSION AND RECOMMENDATIONS**

The Court finds that Plaintiff's First Amended Complaint fails to state any cognizable claims upon which relief may be granted under § 1983. In this action, the Court previously

granted Plaintiff an opportunity to amend the complaint, with ample guidance by the Court. Plaintiff has now filed two complaints without alleging facts against any of the Defendants which state a claim under § 1983.  The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, **IT IS HEREBY RECOMMENDED** that pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e), this action be dismissed with prejudice for failure to state a claim upon which relief may be granted under § 1983, and that this dismissal be subject to the "three-strikes" provision set forth  in 28 U.S.C. § 1915(g).  Silva v. Vittorio, 658 F.3d 1090, 1098 (9th Cir. 2011).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

   Dated:   **May 8, 2014**                        **/s/ Gary S. Austin**
                                                               UNITED STATES MAGISTRATE JUDGE